Kent A. ADAMSON, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 83–7150.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided Oct. 16, 1984.

Peter A. Camiel, Seattle, Wash., for petitioner-appellant.

Lisa Prager, Washington, D.C., for respondent-appellee.

Before ANDERSON, SKOPIL, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

This appeal raises the question whether the exclusionary rule bars the Internal Revenue Service (IRS) from using in a civil tax proceeding evidence that concededly was illegally obtained by state police. Based exclusively upon that evidence, which we conclude was not obtained in bad faith, the Commissioner of Internal Revenue (Commissioner) made a jeopardy assessment against Adamson in the amount of $262,198.40. With certain modifications, the Tax Court upheld that assessment. Because we believe the Supreme Court's decision in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), precludes application of the exclusionary rule in this context, and that the evidence provides a rational foundation for the assessment, we affirm the Tax Court holding.

FACTS

On January 29, 1980, Seattle police officers arrested Kent Adamson and three others for narcotics violations. Earlier that day, a Seattle branch of the Pacific National Bank of Washington was robbed by two Black males. One suspect was shot and captured by the Seattle police, and the other escaped. Responding to a tip from a hotel maid that she had seen a bank bag filled with money in room 423, the police officers went to the room in the Camlin Hotel in search of the remaining suspect. They had not sought a warrant to search any of the hotel rooms or to arrest anyone there.

When the officers arrived at the hotel room, a Caucasian male and female were leaving the room carrying a briefcase. The officers arrested them and then opened the briefcase. Inside the briefcase were pills and marijuana which appeared to be packaged for delivery. The officers then entered the room and saw Adamson, who is Caucasian, and a female. They immediately arrested the two and then searched the room. In a dresser drawer they found a Seattle First National Bank bag containing a large quantity of money and a plastic bag containing hashish. When asked about the money, Adamson stated that it belonged to him. The officers then sealed the room while they sought a search warrant.

A search warrant was issued on the basis of probable cause to believe a narcotics offense had been committed, and that evidence relevant to the crime could be found in room 423 at the Camlin Hotel. Armed with the warrant, the officers returned to the hotel room and seized over $56,000 in U.S. currency, a Seattle First National Bank bag, personal checks made out to Adamson, hashish, a scale containing a

white powder residue, a passport in Adamson's name, and a travel bag and leather purse with personal items belonging to Adamson and others.

Adamson was not charged with any crime as a result of his arrest and the search.

After the warrant was executed, the Seattle police contacted agents of the Federal Drug Enforcement Administration (DEA) and the IRS to examine the seized materials. The IRS agent, relying upon the seized documents, discussions with DEA officers, Adamson's failure to file an income tax return for several years, his prior conviction for a cocaine offense, and his arrest for possession of narcotics, concluded that he did not report his taxable income for 1979.

Based on this conclusion, the Commissioner made a jeopardy assessment against Adamson in the amount of $262,198.40. After noting the government's concession of two mathematical errors and decreasing the jeopardy assessment to correct those errors, the Tax Court sustained the Commissioner's determination. The Tax Court assumed, for purposes of its analysis, that the evidence was illegally seized by the Seattle police and would have been excluded in a criminal proceeding. It nevertheless held that the evidence was admissible in a civil tax proceeding.

Based on that evidence, the Tax Court concluded that the Commissioner had sustained his burden of linking the taxpayer to the income-producing activity of drug trafficking, and that the revenue agent's deficiency computations had a rational foundation. The court found that Adamson failed to carry the burden that had shifted to him to prove that the Commissioner's determination was erroneous, or that his failure to file a return was due to reasonable cause.

On appeal, Adamson argues that the Seattle police obtained the search warrant in bad faith and because they almost immediately brought in federal agents, the evidence should have been excluded to effectuate the policies of the exclusionary rule. In addition, he argues that even if the

evidence was admissible, it does not provide a rational foundation for the deficiency assessment. We do not agree.

## DISCUSSION

### 1. *Exclusionary Rule*

In considering the applicability of the exclusionary rule to the evidence used in the tax proceeding we do not write on a fresh slate. In *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court held that the exclusionary rule did not bar, in a federal civil tax proceeding, use of evidence obtained by state law enforcement officers in good-faith reliance on a warrant that later proved to be defective. The Court focused its analysis upon the potential deterrent effect of excluding the evidence as compared to the social cost of losing probative evidence. On balance, the Court found that exclusion of the evidence in the civil proceeding would be unwarranted. *Id.* at 458, 96 S.Ct. at 3034.

In assessing that balance, the Court pointed to two factors that significantly weakened the deterrent effect of invoking the rule. First, the Court noted that the state law enforcement officers were already "punished" by the exclusion of the evidence in the state criminal trial. *Id.* at 448, 96 S.Ct. at 3029. The Court reasoned that any further application of the rule in a federal civil proceeding would provide at best a marginal increase in the deterrent effect, and that the marginal increase did not outweigh the societal costs resulting from the exclusion. *Id.* at 454, 96 S.Ct. at 3032. Second, the Court noted the intersovereign context of the case and absence of a connection between the purposes of the offending state officers (to convict for illegal gambling) and those of the federal government (to obtain a deficiency judgment in a civil tax proceeding). *Id.* at 458, 96 S.Ct. at 3034. The Court reasoned that "the deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement officer is

the removal of that evidence from a civil suit by or against a different sovereign." *Id.* Use of the evidence in a federal civil proceeding, the Court said, is not within the state officers' "zone of primary interest." *Id.*

In the case at bar, the Tax Court assumed the illegality of the state officers' search without deciding the issue. We too assume it for purposes of our analysis. Because the question is whether the exclusionary rule applies at all, there is no reason for us to determine the legality of the seizures. *See Tirado v. Commissioner,* 689 F.2d 307, 309 & n. 2 (2d Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).

■ Adamson urges this court to distinguish *Janis* on the ground that in his case there was no criminal proceeding and hence no punishment of the offending state officers. The Supreme Court has answered that contention in *INS v. Lopez-Mendoza,* —— U.S. ——, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). *Lopez-Mendoza,* like the case at bar, involved a civil defendant who was never prosecuted criminally. Although the Court recognized that one of the factors noted by the *Janis* Court as contributing to the weakness of the potential deterrent effect of exclusion was that the offending state officers were already "punished" by exclusion of the evidence from the state criminal proceeding, *id.* at —— —— ——, 104 S.Ct. at 3484–86, it did not find the absence of that factor to be determinative. Similarly, here, we do not find the absence of a state criminal prosecution to be determinative of the question of whether the exclusionary rule should be invoked.

The only logical explanation of the failure to prosecute Adamson for violation of state or federal criminal drug laws is that the prosecuting authorities concluded that the evidence obtained by the search would have been excluded. The decision not to prosecute because of the police officers' conduct provides deterrence equivalent to the exclusion of the evidence.

■ Adamson also urges this court to distinguish *Janis* on the ground that *Janis* involved state law enforcement officers obtaining evidence in good-faith reliance on a warrant that later proved to be defective, whereas the case at bar involved bad faith on the part of the state police. Adamson's contention presents us with the question whether a bad faith violation of an individual's fourth amendment rights requires application of the exclusionary sanction in a civil tax proceeding. We believe that it does; however, in this case we cannot say that the police officers acted in bad faith.

■ When evidence is obtained by deliberate violations of the fourth amendment, or by conduct a reasonable officer should know is in violation of the Constitution, the probative value of that evidence cannot outweigh the need for a judicial sanction. In *Lopez-Mendoza,* the majority was careful to point out:

> [W]e do not deal here with egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained. *Cf. Rochin v. California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183] (1952).[1]

At ——, 104 S.Ct. at 3490.

■ Although the Court has often emphasized only the deterrent purpose of the rule, *see Janis,* 428 U.S. at 446, 96 S.Ct. at 3028, we know from the language in *Lopez-Mendoza* that deterrence is not the only consideration. —— U.S. at ——, 104 S.Ct. at 3490. The Court has never abandoned its pronouncement in *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960), that in addition

---

1. In *Rochin,* the arresting officers "jumped" on Rochin and tried to force open his mouth to extract capsules that he had swallowed when the officers appeared. When that struggle failed, the officers handcuffed him and took him to a hospital where they directed a doctor to force an emetic solution through a tube into Rochin's stomach to induce vomiting to produce the capsules. 342 U.S. at 166, 72 S.Ct. at 206. Although *Rochin* involved physical brutality that the Court said "shocks the conscience," we do not believe the *Lopez-Mendoza* Court's citation to *Rochin* was meant to limit "egregious violations" to those of physical brutality.

to deterrence, the exclusionary rule serves the vital function of preserving judicial integrity. In fact, in *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court noted the vitality of the "imperative of judicial integrity":

> Absent unusual circumstances, when a Fourth Amendment violation has occurred because the police have reasonably relied on a warrant issued by a detached and neutral magistrate but ultimately found to be defective, "the integrity of the courts is not implicated."

At —— n. 22, 104 S.Ct. at 3421 n. 22. We believe that implicit in that statement is a recognition that had the police unreasonably violated the defendant's fourth amendment rights, the integrity of the courts would be implicated. Federal courts cannot countenance deliberate violations of basic constitutional rights. To do so would violate our judicial oath to uphold the Constitution of the United States. 28 U.S.C. § 453 (1976).

■■■ Turning to the evidence in this case, however, we cannot say that the police officers acted in bad faith in obtaining the evidence from the hotel room. An objective test should be used to determine whether a reasonable police officer would have believed that the search was legal. *See Leon*, at —— n. 20, 104 S.Ct. at 3420 n. 20. Although there is some question about the legality of the search, and for purposes of our analysis, we have assumed that the evidence would have been excluded from a criminal trial, we find no evidence of bad faith. Applying an objective test to the undisputed evidence, we find that the constitutional questions are close enough that a reasonably competent police officer could have believed that the search was legal. Accordingly, the integrity of the courts is not implicated. Hence our focus, like the Supreme Court's focus in *Leon*, turns to the potential deterrent effect of applying the exclusionary sanction in this case.

■■■ In applying the *Janis* balancing test, we note that the offending officers were state officers in search of evidence of a crime—first, a bank robbery, and later, narcotics violations. As the *Janis* Court noted, common sense indicates that local police searching for evidence of criminal activity are not particularly interested in obtaining evidence for a different sovereign for use in a civil proceeding. *Janis*, 428 U.S. at 458, 96 S.Ct. at 3034. Their interest is in obtaining evidence that will lead to a conviction for the crime. Without any evidence of participation by the IRS agents in the search, we can find no reason to presume that the state officers were motivated by a desire to help the federal tax authorities obtain evidence for a deficiency assessment. The tax deficiency proceedings are simply not within the "zone of primary interest" of the state police who made the seizures. *Id; Tirado*, 689 F.2d at 314. Consequently, exclusion of the evidence from the civil tax proceeding would not provide a substantial and efficient deterrent.

### 2. *Rational Foundation for Deficiency Determination*

The Tax Court held that the evidence seized by the Seattle Police Department, coupled with other evidence admitted at the trial, was sufficient to provide a solid evidentiary foundation linking Adamson to the income-producing activity of drug dealing. The court found that the determination had a sufficient factual basis to shift the burden to Adamson to show that it was erroneous. Because these determinations are factual, we may not overturn them on appeal unless we find them to be clearly erroneous. *See Weimerskirch v. C.I.R.*, 596 F.2d 358, 360 (9th Cir.1979).

Adamson argues that the determination should be overturned for two reasons. First, he claims that there is insufficient evidence to connect him to the narcotics activity for the period at issue here. Second, he claims that the Tax Court failed to present sufficient evidence to substantiate the computations it made. Specifically, he claims that the Commissioner's failure to undertake a bank deposit or net worth increase analysis to test or confirm the accuracy of the seized records destroyed the

rational foundation for the deficiency determination. Neither argument is persuasive.

### A. *Evidence Linking Adamson to the Sale of Drugs*

▮ In an action to collect taxes, the government bears the burden of proving that the taxes are owing. *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984). Once the government introduces its assessment of tax due, a presumption usually arises that the assessment is correct. *Id.; Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). This court has made clear, however, that the presumption arises only where some factual basis supports it. *Weimerskirch*, 596 F.2d at 361. We believe that factual basis exists here.

▮ In *Weimerskirch*, the government introduced no evidence showing that Weimerskirch had ever sold heroin, or that he had received any unreported income. Accordingly, the court held that the Commissioner could not rely solely on the presumption of correctness. Here, in contrast, there was clear evidence linking Adamson to the sale of drugs and receipt of unreported income. When the police arrived at the hotel room, they found two individuals leaving the room carrying a briefcase that contained "quantities of pills, marijuana, and hashish, which appeared to be packaged for delivery." They then entered the room where they found Adamson and discovered a bank bag containing the large sum of currency. Adamson, without hesitation, claimed ownership of the money. In addition, the police found numerous items in the room belonging to Adamson, including checks for fairly large amounts of money. A clearer linkage is hard to imagine in a case involving illegal activity where explicit labels of ownership are rare. We cannot say that the Tax Court clearly erred in finding that Adamson was engaged in

the sale of drugs, and that he received money for it that he did not report as income. *See Gerardo v. Commissioner*, 552 F.2d 549, 553 (3d Cir.1977).[2]

▮ Adamson contends that even if the records were his, the government failed to prove that they reflected transactions for the year of 1979. The argument is unpersuasive. The records were seized in January 1980, and the monthly notations on those records were to October, November and December. Those months had not yet transpired in 1980. It was reasonable for the Tax Court to infer that the months related to the most recent months of October, November and December.

### B. *Rational Foundation for Determination of Amount of Taxable Income*

▮ Once the government has carried its initial burden of introducing "some substantive evidence" to link the taxpayer with the income-producing activity, *see Edwards v. Commissioner*, 680 F.2d 1268, 1270 (9th Cir.1982) (per curiam), the burden shifts to the taxpayer to prove that the Commissioner's assessment is arbitrary or erroneous. *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *United States v. Stonehill*, 702 F.2d at 1294. If the taxpayer successfully rebuts the presumption that the assessment is correct, the presumption disappears, and the burden of proving the deficiency reverts to the government. *Stonehill*, 702 F.2d at 1294. The Tax Court held that the government met its initial burden linking Adamson to drug dealing, and that therefore the presumption of correctness attached.

▮ Adamson claims that the calculations of the IRS agent were so incomplete and erroneous that no weight should be attached to them. It is true that the agent testified that he was assuming that the figures listed in the records seized in the

---

**2.** Adamson's reliance upon *Gerardo* is misplaced. There, the court found scant evidence to connect Gerardo with gambling activities for a specific period, and concluded that "no court could properly draw an inference of such involvement." *Id.* at 554. It can hardly be said that no court could properly draw an inference that Adamson was in the business of selling drugs.

hotel room represented U.S. dollars, and that they represented gross receipts, expenses, and various totals of net income. He also acknowledged that he had failed to check the mathematical computations that he had made, and that on certain points he was wrong. Adamson argues that because of these assumptions, mathematical errors, and the lack of any specific analysis such as a net worth analysis, the calculations cannot serve as a rational basis for the deficiency assessment.

We note first that the government conceded that the IRS agent made two mathematical errors in his computations, and that the Tax Court sustained the Commissioner's determination with appropriate modifications reflecting those errors. The errors, therefore, cannot be a basis for questioning the assessment.

In *Gerardo*, the Third Circuit held that [s]ince appellant kept no records, ... "it was proper and indeed necessary to devise some substitute method for reconstructing income." Where unreported income from gambling is at issue, the projection of average daily gross receipts over a period of time in order to calculate gross income is an acceptable method of reconstruction. Furthermore, Gerardo failed to sustain his burden of producing evidence which would have obviated the use of the Commissioner's formula. Therefore, we have concluded that the Tax Court did not err in approving the Commissioner's method of reconstruction.

*Gerardo*, 552 F.2d at 552 n. 6 (citations omitted). Similarly, here, the Commissioner had no real way of conducting a net worth analysis. He had only sketchy records. The burden of proving that the IRS agent erred rests with the taxpayer. Adamson has failed to carry that burden.

■ Where the government has introduced evidence linking the taxpayer to the illegal activity, the taxpayer should not be allowed to avoid paying taxes simply because he keeps incomplete records. The absence of tax records cannot automatically deprive the Commissioner of a rational foundation for the income determination. As the Fifth Circuit recognized in *Webb v. C.I.R.*, 394 F.2d 366, 373 (5th Cir.1968):

[T]he absence of adequate tax records does not give the Commissioner carte blanche for imposing Draconian absolutes .... [However,] such absence does weaken any critique of the Commissioner's methodology.

Arithmetic precision was originally and exclusively in [the taxpayer's] hands, and he had a statutory duty to provide it .... [H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails.

■ Adamson failed to offer any evidence to show that his failure to file a 1979 federal income tax return was due to reasonable cause or that part of the deficiency was not due to negligence or intentional disregard of the rules. Accordingly, the Tax Court's decision to uphold the commissioner's penalty determinations under 26 U.S.C. §§ 6651(a) and 6653(a) is

AFFIRMED.