Robert W. **BRADFORD**,
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

No. 85–7410.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 16, 1986.

Decided Aug. 6, 1986.

---

Robert W. Bradford, Chula Vista, Cal., for petitioner-appellant.

Nancy G. Morgan, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CHOY, HUG and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

Robert Bradford appeals from a Tax Court decision upholding in part an assessment by the Commissioner for tax deficiency, fraud, and failure to pay estimated tax for the tax years 1973–1977.

## I.

### Facts

In 1972, Bradford and several other individuals founded the Committee for Free-

dom of Choice in Cancer Therapy, Inc. (the "Committee"), which began as a legal defense fund for a California physician who had been arrested for dispensing laetrile, but which quickly became involved in a number of other activities, including seminars, political action, and the lawsuit which led to the legalization of laetrile, *Rutherford v. United States*, 429 F.Supp. 506 (W.D.Okla.1977). The Committee's records consisted mainly of a series of ledgers, with little supporting documentation of income or expenses.

In 1973, Bradford formed a partnership with J. Franklin Salaman to smuggle laetrile into the United States and arrange for its distribution around the country. Bradford claims that this partnership had two purposes, first, to make laetrile available to cancer patients in this country, and second, to provide funds for the Committee's activities. Bradford was arrested on smuggling charges in late 1975, and he and Salaman were later convicted of the charges and sentenced to probation and a fine. After laetrile was legalized in 1977, Bradford and Salaman formed Cyto-Pharma U.S.A. to handle their import operations; that partnership was dissolved in late 1977. Almost all of Bradford's and Salaman's operations were conducted on a cash basis.

Although the laetrile smuggling generated a considerable amount of income, Bradford's 1973 tax return showed only his employment income. He did not file tax returns for the years 1974–1977. The Commissioner ultimately assessed Bradford $1,784,316 in tax deficiencies, $891,673 for fraud under 26 U.S.C. § 6653(b) (1982), and $98,001 for failure to file estimated taxes under 26 U.S.C. § 6654 (1982), for a total of $2,773,990. While the Tax Court upheld the imposition of the tax deficiencies and the penalties, it found that Salaman was equally responsible for the partnerships' tax liabilities and made appropriate adjustments in its judgment to reflect this determination. Bradford appeals the Tax Court's judgment. We affirm.

This case essentially presents two issues: (1) was the Tax Court correct in upholding the deficiency assessment, and (2) was the Tax Court's finding of fraud clearly erroneous?.

## II.

### Deficiency Assessment

"In an action to collect taxes, the government bears the burden of proving that the taxes are owing.... Once the government introduces its assessment of tax due, a presumption usually arises that the assessment is correct." *Adamson v. Commissioner*, 745 F.2d 541, 547 (9th Cir.1984) (citation omitted). This presumption must have some factual basis, *id.* that is, the Government must produce "some substantial evidence ... demonstrating that the taxpayer received unreported income." *Delaney v. Commissioner*, 743 F.2d 670, 671 (9th Cir.1984) (citation omitted); *Adamson*, 745 F.2d at 547. Once the Government has done so, "the taxpayer must establish by a preponderance of the evidence that the determination is arbitrary or erroneous." *Delaney*, 743 F.2d at 671. *See also Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir.1985); *Larsen v. Commissioner*, 765 F.2d 939, 941 (9th Cir.1985); *United States v. Stonehill*, 702 F.2d 1288, 1293, 1294 (9th Cir.1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984).

Here Bradford freely admits that he received unreported income from his laetrile-smuggling operations. He contests the Commissioner's deficiency assessment essentially on three grounds: First, he argues that the Commissioner improperly used a "weighted average" unit cost rather than one fixed unit cost in computing the costs of goods sold. Second, he claims that the Commissioner did not adequately take into account his expenses in connection with the Committee's activities. Third, he contends that the Commissioner improperly increased the tax assessments for 1976 and 1977 by extrapolating sales figures from a record of three months' sales and from information developed through Food and Drug Administration ("FDA") surveillance of his laetrile-importing activities. The Commissioner argues, in essence, that be-

cause Bradford dealt mostly in cash and kept inadequate records and supporting documentation, his attempt to reconstruct Bradford's income and expenses was reasonable, given the circumstances.

In a recent series of cases, this court has reiterated its long-standing approach to the type of situation presented by Bradford's appeal, where the taxpayer kept inadequate records or no records at all, and then relied mainly on testimony to challenge the Commissioner's reconstruction of income and deductions or assessments. *Adamson v. Commissioner*, 745 F.2d 541 (9th Cir. 1984); *Keogh v. Commissioner*, 713 F.2d 496 (9th Cir.1983); *United States v. Stonehill*, 702 F.2d 1288 (9th Cir.1983). All three cases reach the same result, which was explained in *Adamson* as follows:

> Where the government has introduced evidence linking the taxpayer to the illegal activity, the taxpayer should not be allowed to avoid paying taxes simply because he keeps incomplete records. The absence of tax records cannot automatically deprive the Commissioner of a rational foundation for the income determination. As the Fifth Circuit recognized in *Webb v. C.I.R.*, 394 F.2d 366, 373 (5th Cir.1968):
>
>> [T]he absence of adequate tax records does not give the Commissioner carte blanche for imposing Draconian absolutes.... [However,] such absence does weaken any critique of the Commissioner's methodology.
>>
>> Arithmetic precision was originally and exclusively in [the taxpayer's] hands, and he had a statutory duty to provide it.... [H]aving defaulted in his duty, he cannot frustrate the Commissioner's reasonable attempts by compelling investigation and recomputation under every means of income determination. Nor should he be overly chagrined at the Tax Court's reluctance to credit every word of his negative wails.

*Adamson*, 745 F.2d at 548; *see also Keogh*, 713 F.2d at 502; *Stonehill*, 702 F.2d at 1296.

■ As to Bradford's first contention, concerning the computation of cost of goods sold, Bradford's own records show a fluctuation in the prices he paid for laetrile; thus, the "weighted average" approach used by the Commissioner to compute the cost of goods sold appears, if anything, more reasonable than Bradford's "single unit cost" method.

■ Bradford's second contention is that the Tax Court should have permitted the deduction of expenses he contends he paid on behalf of the Committee in conducting the seminars because the seminars promoted the sales of laetrile. Even if we were to make the doubtful assumption that these expenses could somehow be deducted as his personal business expenses, Bradford had the burden of producing evidence to support these claimed expenses. *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985). There was no substantiation for these expenses other than the reports of the Committee's activities, some brief summaries and vague testimony of Committee members, and Bradford's own testimony.

■ Bradford further argues that the Tax Court improperly excluded his Exhibit 99, which was apparently a summary of his testimony as to his claimed expenditures on the Committee's behalf. The Tax Court's evidentiary decisions are reviewed for an abuse of discretion. *Keogh,* 713 F.2d at 499. Contrary to Bradford's assertion, a review of the transcript shows that the tax judge did, in fact, allow Bradford to testify about this issue and allowed into evidence all of the other exhibits offered by Bradford to support his claims. The exclusion of the summary was not an abuse of discretion. The Tax Court's finding that Bradford had failed to establish his entitlement to the expenses or deductions was adequately supported by the record. *See id.* at 502.

Bradford's third contention questions the Commissioner's increased assessments for tax years 1976 and 1977. For 1976, he argues that the Commissioner's extrapolation of his annual income from a receipt

book covering the last three months of the year was improper because it did not adequately consider the time, such as weekends and holidays, when Bradford was not engaged in smuggling laetrile, and other factors which may have affected the income generated by Bradford's operations. Our review of the record convinces us that the Commissioner's extrapolation did take these factors into consideration. Thus, as in *Keogh,* 713 F.2d at 502, we reject Bradford's arguments that the 1976 income projections were unreasonable.

■ For 1977, the Commissioner determined Bradford's income by extrapolating the total sales of laetrile from a sample generated by the FDA surveillance of Bradford's activities. Bradford argues that this extrapolation is inaccurate because it did not take into account the time that he was on trial for laetrile smuggling and, thus, presumably not then involved in the laetrile operations. This argument is meritless. The figures were derived from surveillance of shipments that occurred *during* Bradford's trial on the smuggling charges, and the Commissioner presented independent evidence in the form of receipts, also contemporaneous with the trial, which support the income projections. The Tax Court's finding that Bradford had failed to show that the Commissioner's assessment was unreasonable was not clearly erroneous.

## III.

### *Civil Fraud Penalty*

■ The Commissioner also assessed penalties for civil fraud under 26 U.S.C. § 6653(b), which provides that "[i]f any part of any underpayment ... of tax ... is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment."

"In the context of the 50 percent penalty of section 6653, fraud is intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing." *Conforte,* [*v. Commissioner*], 692 F.2d [587] at 592 [ (9th Cir.1982) ] (citing *Powell v. Granquist,* 252 F.2d 56, 60 (9th Cir.1958)). The Commissioner must prove fraud by clear and convincing evidence, I.R.C. § 7454(a); *Stone v. Commissioner,* 56 T.C. 213, 220 (1971), but intent can be inferred from strong circumstantial evidence, *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943); *Powell,* 252 F.2d at 61; *Stone,* 56 T.C. at 223–24. *Akland v. Commissioner,* 767 F.2d 618, 621 (9th Cir.1985). The Tax Court's finding of fraud is factual and should be reversed only if this panel is "left with the definite and firm conviction ... that there is no clear and convincing evidence of fraud." *Id.* (citations omitted). *See also Considine v. United States,* 683 F.2d 1285, 1286 (9th Cir.1982).

■ Because fraudulent intent is rarely established by direct evidence, this court has inferred intent from various kinds of circumstantial evidence. These "badges of fraud" include: (1) understatement of income, *see, e.g., Grudin v. Commissioner,* 536 F.2d 295, 296 (9th Cir.1976); *Ruark v. Commissioner,* 449 F.2d 311, 313 (9th Cir. 1971); *Bahoric v. Commissioner,* 363 F.2d 151, 153–54 (9th Cir.1966); *Estate of Rau v. Commissioner,* 301 F.2d 51, 54–55 (9th Cir.), *cert. denied,* 371 U.S. 823, 83 S.Ct. 41, 9 L.Ed.2d 62 (1962); *Factor v. Commissioner,* 281 F.2d 100, 129 (9th Cir.1960), *cert. denied,* 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961); *Cohen v. Commissioner,* 266 F.2d 5, 12 (9th Cir.1959); *Powell v. Granquist,* 252 F.2d 56, 61 (9th Cir.1958); (2) inadequate records, *see, e.g., Bahoric,* 363 F.2d at 154; *Factor,* 281 F.2d at 129; *Cohen,* 266 F.2d at 12; *Powell,* 252 F.2d at 61; (3) failure to file tax returns, *see, e.g., Factor,* 281 F.2d at 129; *Powell,* 252 F.2d at 61; (4) implausible or inconsistent explanations of behavior, *see, e.g., Bahoric,* 363 F.2d at 153; *Factor,* 281 F.2d at 129; *Baumgardner v. Commissioner,* 251 F.2d 311, 321 (9th Cir.1957); (5) concealing assets, *see, e.g., Ruark,* 449 F.2d at 312–13; *Powell,* 252 F.2d at 61; and (6) failure to cooperate with tax authorities, *see, e.g.,*

*Ruark,* 449 F.2d at 313; *Powell,* 252 F.2d at 61.

 The following facts support a finding of fraud: (1) Bradford engaged in illegal activities; (2) he failed to file returns for four consecutive years; (3) he failed to report substantial business income, his salary from Stanford, and the gain on the sale of his residence, all of which he knew constituted taxable income; (4) he dealt in cash to avoid scrutiny of his finances; (5) he filed false W–4's; (6) he made efforts to conceal his laetrile distribution activities; (7) he failed to make estimated tax payments; (8) he failed to cooperate with the revenue agent during the audit examination; and (9) he failed to maintain adequate records.

The Tax Court's finding that fraud had been established by clear and convincing evidence was adequately supported by the record.

The judgment is AFFIRMED.