**M.A. WOLF, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 92–2488.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1993.

Decided Dec. 30, 1993.

---

H. Louis Sirkin (briefed) and Edmund McKenna (argued), Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for petitioner-appellant.

Gary R. Allen, Acting Chief (briefed), Jonathan S. Cohen, and Kenneth W. Rosenberg (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for respondent-appellee.

Before: NORRIS and SILER, Circuit Judges; and OAKES, Senior Circuit Judge.*

OAKES, Senior Circuit Judge.

The issue in this appeal is whether the exclusionary rule applies in civil tax proceedings to bar the admission of evidence seized in an allegedly illegal search conducted in furtherance of a criminal narcotics investigation. We are required by the decisions of the Supreme Court to apply the exclusionary rule in this intrasovereign context only if application would deter future violations of the Fourth Amendment. We conclude that tax deficiency proceedings are "too remote from the 'zone of primary interest'" of the narcotics agent who made the seizure for application of the exclusionary rule to deter future violations. *Tirado v. C.I.R.*, 689 F.2d 307, 314 (2d Cir.1982), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). We hold, therefore, that the exclusionary rule does not apply in this case and affirm the judgment of the Tax Court.

I. BACKGROUND

A. The Searches

On January 6, 1984, FBI Special Agent Robert A. Brawner prepared an affidavit supporting an application for a warrant to search Michael A. Wolf's residence for "Narcotics, Narcotics Paraphe[r]nalia, Books, Records, and other fruits and instruments, of the crime of distribution of Narcotics, in violation of Title 21, section 841(a)(1) U.S. Code." Among other things, this affidavit stated that one Vicki Toms "[a]fter being advised of her constitutional rights.... admitted that she had picked up ... cocaine at an address near Xenia, Ohio." The warrant was signed by Judge Judson L. Shattuck, Jr. of the Court of Common Pleas of Greene County, Ohio, and executed by Agent Brawner and other federal and local law enforcement officers. While executing the search warrant, an officer inspected a barn on the premises and noticed marijuana in plain view inside a car. Upon learning of this observation, Agent Brawner prepared a second affidavit in support of a second application for a second search warrant explicitly covering the barn and the car. This warrant was signed by Judge Shattuck in the early hours of January 7, 1993. This warrant was also executed. In the course of the two searches, the officers seized 400.2 grams of cocaine, 201 pounds of marijuana, and $143,286 in cash.

B. Criminal Proceedings

On May 4, 1984, Wolf pleaded guilty to one count of possession with intent to distribute approximately 12 ounces of cocaine. Wolf was sentenced to imprisonment for nine years, plus special parole for three years.

C. Secondary Civil Tax Proceedings

On December 11, 1989, the IRS issued a notice of deficiency to Wolf, recalculating his taxable income for 1983 to include the seized cash and treating the value of the seized cocaine and marijuana as taxable income from self-employment. The IRS also asserted that Wolf was liable for negligent failure to report taxable income and for substantial understatement of tax.

On March 9, 1990, Wolf filed a petition in Tax Court challenging the deficiency and additions. Wolf offered the testimony of Vicki Smith (née Toms) to the effect that, contrary to Agent Brawner's affidavit, she never admitted anything. Wolf argued that Agent Brawner's statement that Toms admitted that she had picked up cocaine at an address near Xenia was perjurious. Wolf then argued that, because the affidavit contained a perjurious statement, the subsequent search

---

* The Honorable James L. Oakes, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

violated his rights under the Fourth Amendment. Accordingly, Wolf argued, evidence seized during the search should have been excluded from the tax deficiency proceeding. Because the second affidavit and second search followed from the first allegedly unconstitutional search, Wolf argued further, evidence from the second search should also have been excluded as "fruit of the poisonous tree." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939).

The Tax Court, Judge Beghe, assumed for the purpose of argument that Wolf's Fourth Amendment rights were violated.[1] The Tax Court found that the exclusionary rule did not apply, however, because the rationale of the exclusionary rule, deterrence, would not be served in this case. Accordingly, the Tax Court admitted evidence of the seized cocaine, marijuana, and cash. On August 31, 1992, the Tax Court entered its decision finding Wolf's 1983 taxes to be deficient and imposing additions to the tax. Wolf filed a timely notice of appeal on November 27, 1992.

## II. DISCUSSION

### A. Preliminary Issues

■ Before reaching the central issue in this case, it is necessary to address a preliminary issue raised by the Government.

The Government argues that this Court need not reach the question whether the exclusionary rule applies because even if the rule applies and even if the evidence were seized illegally, the notice of deficiency was not based entirely on illegal evidence. The Government maintains that because there was a basis for the notice of deficiency independent of the illegal evidence, the burden of challenging the sufficiency of the notice remained on Wolf. The Government argues that Wolf failed to meet this burden. Government's Brief at 16–22.

The Government bases its position on the fact that "[i]n 1989, many years after the

seizure, [Wolf] swore in an affidavit that he owned the cash and drugs that were seized, and that he had obtained them during [1983]." Government's Brief at 20. The Government cites this affidavit as independent evidence supporting the notice of deficiency. For the Government to prevail in this position, however, it must show that the signing of the affidavit was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). The Government has offered no direct evidence, however, as to the voluntariness of this affidavit. The only evidence of voluntariness was the passage of years between the allegedly illegal search and the execution of the affidavit. We find, therefore, that the Government has failed to meet its burden of showing the voluntariness and, hence, the admissibility of the affidavit. *See Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975) ("burden of showing admissibility rests, of course, on the prosecution").[2]

### B. Application of the Exclusionary Rule to Secondary Civil Tax Proceedings

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under the exclusionary rule first announced by the Supreme Court in *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914), evidence seized in violation of the Fourth Amendment may not be admitted in a criminal proceeding. The rationale for the rule was protection of individual constitutional rights through the imposition of duties on law enforcement officials

---

1. We entertain the same assumption for the purposes of this appeal. We express no opinion whether Wolf's Fourth Amendment rights actually were violated.

2. Moreover, the affidavit was evidently prepared at the Government's request. To hold that the affidavit constituted a waiver, when it was prepared to accommodate the Government insofar as the presentation of evidence was concerned, would be unfair.

conducting searches and seizures. *See Tirado v. C.I.R.*, 689 F.2d at 315 (Oakes, J., concurring); T. Schrock & R. Welsh, *Up from Calandra: The Exclusionary Rule as a Constitutional Requirement*, 59 Minn.L.Rev. 251 (1974).

In the past two decades, the Supreme Court has shifted the rationale of the exclusionary rule to one solely involving deterrence of future violations by law enforcement agents. *Withrow v. Williams*, ── U.S. ──, ──, 113 S.Ct. 1745, 1750, 123 L.Ed.2d 407 (1993) ("the [exclusionary] rule serves ... to deter future Fourth Amendment violations"); *United States v. Janis*, 428 U.S. 433, 457 n. 34, 96 S.Ct. 3021, 3033 n. 34, 49 L.Ed.2d 1046 (1976) (deterrence is the primary, "if not the sole," purpose of the exclusionary rule); *Stone v. Powell*, 428 U.S. 465, 484, 96 S.Ct. 3037, 3047, 49 L.Ed.2d 1067 (1976). This emphasis has been accepted by this circuit. *Gilbert v. Parke*, 763 F.2d 821, 824 (6th Cir. 1985) ("Deterrence is, of course, the rationale underlying the exclusionary rule.") (citations omitted).

The Supreme Court has required that the deterrence effect must be balanced against the "substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence." *United States v. Janis*, 428 U.S. at 448–49, 96 S.Ct. at 3029 (citations omitted). Accordingly, to determine whether the exclusionary rule applies in any particular context, a court must determine whether application of the rule is deemed substantially likely to deter future violations of the Fourth Amendment. *United States v. Janis*, 428 U.S. at 453–54, 96 S.Ct. at 3031–32; *Stone v. Powell*, 428 U.S. at 493–94, 96 S.Ct. at 3051–52; *Tirado v. C.I.R.*, 689 F.2d at 310. To determine whether application of the rule is substantially likely to deter future violations, a court will examine the "zone of primary interest" of the officers who conducted the search. *United States v. Janis*, 428 U.S. at 458, 96 S.Ct. at 3034. Where subsequent proceedings are beyond this "zone," application of the exclusionary rule is not substantially likely to deter future violations. Where subsequent proceedings are within this "zone," application of the exclusionary rule is substantially likely to deter future violations.

In *Janis*, the Supreme Court held that the exclusionary rule does not apply in an intersovereign context to bar the use in a federal civil tax proceeding of evidence illegally seized by a state law enforcement officer. The Court observed that the applicability of the exclusionary rule to state and federal criminal proceedings already deterred Fourth Amendment violations. It then proceeded to determine whether the extension of the exclusionary rule to federal civil tax proceedings would result in a marginal increase in deterrent effect sufficient to outweigh any impact on the societal interest in law enforcement. The Court held that the connection between the state officer's conduct and the subsequent federal civil tax proceedings was too attenuated to warrant extension of the exclusionary rule. *Janis*, 428 U.S. at 458, 96 S.Ct. at 3034.

The Court in *Janis* expressly declined to consider the application of the exclusionary rule to civil proceedings in the intrasovereign context. *Janis*, 428 U.S. at 456, 96 S.Ct. at 3033. Since *Janis*, several courts have considered this question. In *Tirado v. C.I.R.*, the Second Circuit held that the exclusionary rule did not apply in the intrasovereign context to bar use in a federal civil tax proceeding of evidence illegally seized by a federal narcotics officer. In so holding, the court discounted the significance of the fact that the search and seizure was conducted by agents of one sovereign and used in secondary proceedings of another sovereign.[3] Instead, the court focused on the "relationship between the purposes of the search and those of a subsequent proceeding." *Tirado*, 689 F.2d at 312. In determining the purpose of the search, the court inquired into the "primary zone of interest" of the officer who conducted the search. The court reasoned that the "primary zone of interest" of a federal narcotics agent could be inferred from

---

3. It did so notwithstanding the significance apparently attached to this factor by the Supreme Court in *Janis*, 428 U.S. at 457, 96 S.Ct. at 3033 (criticizing *Suarez v. C.I.R.*, 58 T.C. 792, 1972 WL 2560 (1972) for failing to "distinguish between intersovereign and intrasovereign uses of unconstitutionally seized material.").

the agent's expertise and responsibilities. The court then found that the expertise and responsibility of a federal narcotics agent could not support an inference that civil tax proceedings against narcotics offenders was within the "primary zone of interest" of the agent. The court concluded that application of the exclusionary rule in the intrasovereign context to bar evidence from admission in civil tax proceedings would have little deterrent effect on the behavior of narcotics agents. Thus, the court determined that the exclusionary rule did not apply.

■ We are required by the decisions of the Supreme Court to extend the exclusionary rule only where the deterrent effects are likely to outweigh the increased costs to the societal interest in law enforcement. In considering whether deterrent effects are likely, however, we need not rely primarily on the existence of a correlation between the officer's expertise and authority and the nature of the subsequent proceedings. On the contrary, we believe that a deterrent effect is determined by reference primarily to the nature of the proceedings. To rely primarily on the existence of a correlation between an officer's expertise and authority and the subsequent proceedings, if taken to its logical conclusion, would produce bizarre results. For example, the exclusionary rule would not apply under such analysis where a criminal narcotics investigation is followed by a criminal tax prosecution so long as the seizing officer lacked expertise and authority relating to the subsequent criminal tax prosecution.

■ The primary interest of law enforcement agents is the apprehension, incapacitation, punishment, and (formerly, at least)[4] rehabilitation of criminals, as well as the possible deterrence of future criminals through the imposition of criminal sanctions. It may matter little to the investigating agents that the offense that is actually charged corresponds to their personal areas of expertise and authority. An agent of the Bureau of Alcohol, Tobacco, and Firearms, for example, may be sufficiently interested in

the conviction of an Al Capone for criminal tax evasion as in the conviction of an Al Capone for alcohol or firearms violations. By contrast, such an agent may have little interest in subsequent civil proceedings. Where civil proceedings are brought, for example, to tax ill-gotten gains, such proceedings do little more than subject criminals to the same taxes that govern all citizens. Excluding illegally seized evidence from proceedings to enforce tax and regulatory regimes is unlikely to deter law enforcement officials from violating a suspect's Fourth Amendment rights. *See Janis,* 428 U.S. at 457, 96 S.Ct. at 3033 (criticizing *Suarez,* 58 T.C. 792, 1972 WL 2560, in which the exclusionary rule was applied to civil tax proceedings following a search conducted in violation of the Fourth Amendment). We conclude, therefore, that the question whether or not application of the exclusionary rule will deter future violations will depend primarily on the nature of the proceeding. *See, e.g., One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (applying the exclusionary rule in civil forfeiture on basis of the "quasi-criminal" nature of civil forfeiture proceedings); *United States v. 566 Hendrickson Blvd.,* 986 F.2d 990, 998 n. 8 (6th Cir.1993) (same); *United States v. Fifty Three Thousand Eighty–Two Dollars,* 985 F.2d 245, 250 (6th Cir.1993) (same). Where evidence is obtained in an allegedly illegal search in furtherance of a criminal investigation, it is generally unlikely that application of the exclusionary rule to bar the evidence in a secondary civil proceeding will deter future Fourth Amendment violations.

■ While the nature of the proceeding is the primary consideration in determining whether or not deterrence would be served by application of the exclusionary rule, it is not the only consideration. A court may consider whether the proposed use of unconstitutionally seized material is intersovereign or intrasovereign. *Janis,* 428 U.S. at 457, 96 S.Ct. at 3033. A court may also consider whether the search and the secondary pro-

---

**4.** *See* 28 U.S.C. § 994(k); *United States v. Mogel,* 956 F.2d 1555, 1559 (11th Cir.1992) (discussing the irrelevance of rehabilitative considerations to judicial decisions regarding sentencing), *cert. denied,* —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115.

ceeding were initiated by the same agency. *Tirado v. C.I.R.*, 689 F.2d at 312 ("agents are likely to have all the responsibilities of their agency in mind as they go about their investigations"); *Vander Linden v. United States*, 502 F.Supp. 693, 697–98 (S.D.Iowa 1980) (records seized by IRS agent, participating in joint investigation of narcotics trafficking for purposes of criminal prosecution for tax evasion, also suppressed in subsequent civil proceeding for assessments and fraud penalties). In addition, a court may also consider "[a]ny indication of an explicit and demonstrable understanding between the two law enforcement bodies." *Tirado*, 689 F.2d at 312. In the absence of an explicit and demonstrable understanding between the two agencies, a court may consider the existence of a statutory regime in which both agencies share resources—particularly resources derived from one of the proceedings. *See, e.g.*, 21 U.S.C. § 881(e)(1)(A) (1988) (authorizing the Attorney General to transfer property forfeited under the narcotics laws to "any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property."). Finally, a court may also consider "the relationship between the law enforcement responsibilities and expertise of the seizing officials and the type of proceeding at which the seized material is being offered." *Tirado*, 689 F.2d at 311. Where the relationship between the objectives of the law enforcement agency to which the officer belongs and the secondary proceedings is close, an inference may be drawn that the officers had the use of the evidence in the subsequent proceeding in mind when they made the seizure. The zone of primary interest of an IRS agent, for example, has been held to encompass both criminal and civil tax enforcement proceedings. Hence, the exclusionary rule has been applied to bar the use of illegally seized evidence in civil tax proceedings where that evidence was seized by agents of the IRS. *Pizzarello v. United States*, 408 F.2d 579, 582 (2d Cir.), *cert. denied*, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969) (use of evidence illegally seized by Special Treasury agents excluded from civil tax proceedings following unsuccessful criminal and forfeiture proceedings); *see also United States v. Blank*, 261 F.Supp. 180 (N.D.Ohio 1966) (use of evidence illegally seized by IRS agents excluded from civil tax proceedings).

■ In this case, the use of the seized cash and drugs as evidence in subsequent civil tax proceedings cannot be said to have been within the zone of primary interest of Agent Brawner. The secondary tax proceedings were civil in nature. They were not intended to punish Wolf for his narcotics violations. Rather, the civil tax proceedings were designed to subject Wolf to the same tax requirements to which all citizens are subject, whether their income derives from legitimate or illegitimate sources. Also, there is no indication that the criminal narcotics investigation and the secondary civil tax proceeding were initiated by the same agency. Further, there was no indication of an explicit agreement between Agent Brawner and agents of the IRS. To be sure, there are cases such as *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), holding that a prosecutor's office is an entity that is the spokesman for the Government so that a promise by one attorney binds other attorneys in the same office, or *United States v. Lombardozzi*, 467 F.2d 160 (2d Cir.1972), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973), where it was sought (unsuccessfully) to bind the Department of Justice through the statement of an FBI agent to a defendant in respect to cooperation. But nothing suggests such a link between the FBI and the IRS that the exclusion of evidence in a Tax Court case should automatically result from the assumedly unlawful conduct of the FBI agent investigating a possible narcotics crime. In addition, secondary tax proceedings fall without the scope of Agent Brawner's expertise and authority. The only factor suggesting a relationship between the purposes of the allegedly unconstitutional search and the secondary civil tax proceedings is the fact that both were initiated by the same sovereign. This factor alone, however, is insufficient to suggest that there exists a close relationship between the purposes of the search and the secondary proceedings. In the absence of such a relationship, it is unlikely that application of the exclusionary rule would further

deter future violations. We hold, therefore, that the exclusionary rule does not apply in this case. The decision of the Tax Court is affirmed.

Judgment affirmed.