Anthony N. GRIMES, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.

No. 94–70928.

United States Court of Appeals, Ninth Circuit.

Submitted March 14, 1996.*

Decided April 17, 1996.

---

* The panel unanimously finds this case suitable for decision on the briefs and record, without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Anthony N. Grimes, pro se, Bradford, Pennsylvania, for petitioner-appellant.

Gary R. Allen, Attorney, Tax Division, Department of Justice, Washington, DC, for respondent-appellee.

Before: BEEZER and HAWKINS, Circuit Judges, and ZILLY, District Judge.**

BEEZER, Circuit Judge:

We consider whether the illegal seizure of evidence by agents of the Federal Bureau of Investigation and Drug Enforcement Agency (collectively "FBI") necessarily precludes use of that evidence by the Internal Revenue Service ("IRS") in a civil tax proceeding.

Grimes appeals the Tax Court's entry of a decision assessing delinquent taxes and imposing fraud penalties. Grimes argues that the Tax Court erred in ruling that the exclusionary rule established in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) does not apply in a civil tax proceeding. He also argues that the Tax Court erred in entering a decision based in part on information from documents ordered returned to Grimes by a district court pursuant to Fed.R.Crim.P. 41(e).

We have jurisdiction over Grimes' timely appeal from a final decision of the Tax Court. 26 U.S.C. § 7482. Under the circumstances present in these civil tax proceedings, neither the exclusionary rule nor Rule 41(e) prohibits the IRS from using information from docu-

** The Honorable Thomas S. Zilly, District Judge for the Western District of Washington, sitting by designation.

ments seized by FBI agents during an allegedly illegal search in an unrelated criminal investigation. We affirm.

## I

Grimes did not pay taxes or file tax returns for tax years 1986 through 1989. On February 17, 1989, agents of the FBI searched Grimes' residence pursuant to a warrant. Among other items, they found $10,000 in cash and miscellaneous receipts and documents. Grimes moved for the return of certain property, including the documents, and the government did not oppose the motion. A magistrate judge granted the motion, ordering the FBI, its agents and employees to return the property. Grimes later pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. He is currently incarcerated.

In August 1991, the IRS sent notices to Grimes detailing deficiencies in his taxes. The notices also listed fraud penalties under 26 U.S.C. § 6653(b)(1) based upon Grimes' use of false social security numbers. Grimes challenged the notices by petitioning the Tax Court.

The IRS sent Grimes a request for 51 admissions. Grimes answered 14 and declined to admit 37 on the ground that the admissions could incriminate him. The IRS moved to compel admission. After further motions and submissions, the Tax Court found that Grimes had shown a legitimate fear of prosecution as to 24 of the requests, but not as to the other 13.

Grimes moved in limine and for a protective order, arguing that the remaining 13 requests were the "product of an illegal search and seizure" and that the U.S. District Court for the Eastern District of California had ordered the return of property seized from Grimes' residence. He asked the Tax Court to exclude "any evidence for which no source independent of the search can be shown."

The Tax Court held that the exclusionary rule could not be applied in the pending proceedings and deemed the remaining 13 requests admitted. The parties later entered into a settlement before the court. Grimes subsequently refused to sign the proposed decision prepared by the IRS because it did not include an assurance that the matter would conclude without criminal prosecution.

The Tax Court granted an IRS motion for entry of decision. In his response to the motion, Grimes agreed that the computations were correct but asserted that the decision did not include all terms and that he wished to reserve his right to appeal only the "suppression issue." [1] The Tax Court entered the decision as proposed by the IRS on October 24, 1994. Grimes appeals.

## II

■ Grimes argues that the exclusionary rule precludes the IRS from relying on illegally seized evidence in a civil proceeding. The IRS assumes for the sake of argument that the evidence was seized illegally. We review de novo the legal question whether the exclusionary rule applies to exclude from a civil tax proceeding evidence illegally seized by the FBI. *United States v. Ramos,* 923 F.2d 1346, 1350 (9th Cir.1991).

### A.

In *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Supreme Court held that the exclusionary rule does not prevent the IRS from using, in a federal civil tax proceeding, evidence illegally seized by state law enforcement officials. We followed *Janis* in *Adamson v. Commissioner,* 745 F.2d 541, 545 (9th Cir.1984), where Seattle police gave evidence to the IRS.

The Supreme Court in *Janis* characterized the exclusionary rule as a judicial remedy with the primary goal of deterring officials from violating citizens' Fourth Amendment rights. 428 U.S. at 446, 96 S.Ct. at 3028 ("the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.'") (quoting *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974)). The Court balanced the deterrent effect of exclusion versus the loss

---

1. The Government does not contest Grimes' res-  ervation of his right to appeal this issue.

of admissible and probative evidence. *Id.* at 488–89, 96 S.Ct. at 3029.

Because the civil proceedings fell outside the "zone of primary interest" of the searching agents, reasoned the Court, the deterrent value of applying the exclusionary rule in *Janis* would be marginal at best. *Janis,* 428 U.S. at 458, 96 S.Ct. at 3034. The Court stated:

> [T]he deterrent effect of the exclusion of relevant evidence is highly attenuated when the "punishment" imposed upon the offending criminal enforcement officer is the removal of that evidence from a *civil* suit by or against a *different sovereign.*

428 U.S. at 458, 96 S.Ct. at 3034 (emphasis added). From this language, two distinct factors emerge: (1) the state-to-federal sharing of the evidence (the "intersovereign context") and (2) the civil nature of the federal proceeding (the "civil/criminal distinction").[2] These factors are based upon "common sense" assumptions about the motivations of law enforcement officers. *Id.* The critical assumption is that law enforcement officers have as their primary interest the apprehension and punishment of criminals.

The first factor, the intersovereign context, distinguishes this case from *Janis* and *Adamson.* Grimes' appeal presents the question whether the exclusionary rule necessarily applies to IRS proceedings where the evidence was seized by officials of another federal law enforcement agency.[3] The Court in *Janis* expressly reserved this question: "whether the exclusionary rule is to be applied in a civil proceeding involving an intrasovereign violation." 428 U.S. at 455 n. 31, 96 S.Ct. at 3033 n. 31.

The federal courts of appeal that have addressed the issue have held that the intrasovereign use of illegally seized evidence in a civil tax proceeding does not tilt the balance in favor of exclusion. *See Wolf v. Commissioner,* 13 F.3d 189, 194 (6th Cir.1993); *Tirado v. Commissioner,* 689 F.2d 307, 314 (2d Cir.1982), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). In *Wolf,* the Sixth Circuit relied heavily on the second *Janis* factor, the civil/criminal distinction, in finding that a civil tax proceeding fell outside the "zone of primary interest" of an FBI agent searching for controlled substances and related documents. 13 F.3d at 194. The court also noted the interagency context and the absence of any evidence of "an explicit and demonstrable understanding between the two law enforcement bodies." *Id.* at 195 (quoting *Tirado,* 689 F.2d at 312).

## B.

In Grimes' case, emphasizing the civil/criminal distinction presents a difficulty not faced by the courts in *Wolf* and *Tirado.* The Tax Court decision here not only assessed a deficiency but also entered penalties against Grimes. Grimes argues that the imposition of fraud penalties renders the proceeding quasi-criminal. Two recent Supreme Court cases addressing the definition of "punishment" for the purposes of the Double Jeopardy Clause give this argument a superficial appeal. *See Department of Revenue v. Kurth Ranch,* — U.S. —, —, 114 S.Ct. 1937, 1948, 128 L.Ed.2d 767 (1994) (finding that a Montana state tax on marijuana constitutes punishment); *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (the "civil" label does not determine whether a sanction is punishment).

Both of these decisions, however, cite with approval *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938), where the

---

2. Another factor discussed in *Janis,* the prior suppression of the evidence in a criminal proceeding, is not significant here. Because the exclusionary rule is designed "to prevent, not to repair," the potential of suppression in criminal proceedings is sufficient to deter police from illegal searches. *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). *See Adamson,* 745 F.2d at 545 (the absence of a criminal proceeding may show that the prosecutors concluded that the evidence would have been suppressed).

3. Because the parties do not argue and the record does not reflect an egregious violation of Grimes' Fourth Amendment rights, we need not reach the question whether such a violation would result in the application of the exclusionary rule in this context. *See Adamson,* 745 F.2d at 546 (dicta) (citing *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1050–51, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984)).

Court found the Tax Code's civil fraud penalty remedial in nature and not punitive for double jeopardy purposes. *See Kurth Ranch,* —— U.S. at —— n. 16, 114 S.Ct. at 1946 n. 16; *Halper,* 490 U.S. at 442–43, 109 S.Ct. at 1898–99.[4] Moreover, whether a proceeding results in a "punishment" for double jeopardy purposes *does not determine what is likely to deter officers in the field from violating the Fourth Amendment. See Tirado,* 689 F.2d at 313–14 (criticizing undue reliance on civil/criminal distinction and arguing for common sense deterrence inquiry).

There is no evidence here that the FBI has an understanding with the IRS regarding the fruits of narcotics investigations. Given the array of independent federal agencies, the enforcement of the tax laws through civil proceedings would seem as secondary to an FBI agent as it would to a state officer. In fact, depending on their area of expertise, certain state officers may be more interested in federal tax matters than are federal agents. *See, e.g., Janis,* 428 U.S. at 436, 96 S.Ct. at 3023 (a Los Angeles police officer investigating illegal gambling regularly contacted the IRS when he raided large bookmaking operations).

■ Stated broadly, it may occur to any officer, federal or state, that if he failed to obtain a conviction for the crime he investigated, he might nonetheless "get the suspect for tax evasion." This thought might occur more frequently to a federal agent who has regular contacts with his IRS counterparts, but it also might occur very often to a state or local officer who frequently interacts with the IRS. At this level of generality, the officer may or may not make a distinction between criminal punishment and a civil penalty. A broad statement of the officer's interest is irrelevant, however, because *Janis* focuses on the officer's "zone of *primary* interest."

Under the *Janis* balancing, little or no deterrent effect arises from applying the exclusionary rule to this civil tax proceeding. On the other side of the scale, the cost to the public of excluding the evidence can be readily measured in dollars and cents.

### C.

■ We hold that the intrasovereign context alone does not compel the application of the exclusionary rule. The intrasovereign context does, however, raise the question of the existence of an agreement between agencies. If an FBI agent has a preexisting agreement to share with the IRS information obtained during a search, that agent should be deterred from Fourth Amendment violations by the probability that illegally obtained evidence will not be useful to the IRS, even in a civil proceeding. *See Tirado,* 689 F.2d at 312 ("Any indication of an explicit and demonstrable understanding between the two law enforcement agencies would [mandate application of the exclusionary rule]."). We therefore limit our holding to the facts of this case, where Grimes does not allege *and the record does not reveal any* preexisting agreement—implicit or explicit—between the FBI and the IRS.

### III

■ Grimes also argues that the Tax Court erred in failing to exclude evidence that a district court had ordered returned to Grimes pursuant to Fed.R.Crim.P. 41(e). We disagree.

■ Rule 41(e) does not offer Grimes any protection beyond that provided by the exclusionary rule. "Rule 41(e) does not constitute a statutory expansion of the exclusionary rule." *United States v. Calandra,* 414 U.S. at 348 n. 6, 94 S.Ct. at 620 n. 6. Construing the order for the return of property as a suppression order does not aid Grimes beyond the reach of the exclusionary rule, discussed above.

■ In addition, the order for return of property applies only to the FBI and "its agents and employees." The record does not reflect that the IRS acted as an agent of the FBI.

---

**4.** For a thoughtful discussion of the continuing vitality of *Helvering v. Mitchell,* see *United States v. Brennick,* 908 F.Supp. 1004 (D.Mass.1995).

■ Even if the IRS acted as an agent of the FBI, the order says nothing about the return of copies of seized documents. The IRS is entitled to keep copies of Grimes' records. Although *Goodman v. United States,* 369 F.2d 166 (9th Cir.1966), states that the government must return copies of evidence seized in violation of the Fourth Amendment, *Goodman* relied upon subsequently-invalidated Supreme Court precedent and does not bind us here. *See* 369 F.2d at 168 (illegally obtained evidence "shall not be used at all") (quoting *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920)), *overruling recognized by United States v. Havens,* 446 U.S. 620, 624, 100 S.Ct. 1912, 1915, 64 L.Ed.2d 559 (1980). Because the government may now use illegally obtained evidence in a variety of situations, it should be permitted to retain copies of such evidence absent extreme circumstances not apparent from this record.[5]

### IV

Citing 18 U.S.C. § 401(3), Grimes asks us to use our contempt power to sanction the IRS for failing to return the documents. It is not clear from the briefs or the record whether the originals have been returned. In any event, the IRS was not the agency ordered to return the documents, and it may keep copies even if required to turn over the originals. Grimes has not claimed that the IRS precluded the FBI from complying with the order to return the documents.

The decision of the Tax Court is AFFIRMED.

---

**5.** Although enacted after the relevant events here, the 1989 amendments to Rule 41(e) provide for "reasonable accommodations" to facilitate the return of originals and the retention of copies by the government in the absence of overriding "equitable considerations." Fed.R.Crim.P. 41(e) (1995). *See Ramsden v. United States,* 2 F.3d 322, 327 (9th Cir.1993) (allowing government to keep copies), *cert. denied,* ⎯ U.S. ⎯, 114 S.Ct. 1624, 128 L.Ed.2d 349 (1994).