T.C. Memo. 1998-335

UNITED STATES TAX COURT

CHARLES E. MARQUART, III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17509-97.                  Filed September 22, 1998.

P, a marijuana dealer, was arrested at his
residence.  At the time of the arrest, the police made
a protective sweep of the residence, believing an
accomplice might be present.  They found a number of
live marijuana plants plus documents showing P had
engaged in substantial cash transactions.  P later pled
guilty to marijuana possession.  R determined, on the
basis of documents seized when P was arrested, that P
had substantial unreported income for the years 1991
through 1995.  P filed no returns for those years.  P
concedes liability for tax unless the seized documents
are excluded in this proceeding.  P argues the
documents were fruit of an improper search that
egregiously violated his Fourth Amendment rights.
     <u>Held</u>:  The search was proper, the evidence will
not be excluded, and R's determination, as modified by
agreement of the parties, is upheld.

William J. Johnston, for petitioner.

Gregory M. Hahn, for respondent.

MEMORANDUM OPINION

LARO, Judge:   Charles E. Marquart III has filed a motion in limine seeking to exclude documents police officers seized from his residence.[1]  Petitioner contends the documents were seized in the course of an improper search which egregiously violated his Fourth Amendment right to be free of unreasonable searches and seizures.  Petitioner concedes that if we do not exclude the disputed documents, he is liable for income tax deficiencies and additions to tax in amounts to which the parties have agreed.[2]

---

[1] Petitioner's motion literally asks the Court to restrict respondent from "presenting testimony concerning the calculation of the amount of [his] indebtedness".  However, the parties have argued and treated the motion as though it were aimed at excluding the seized documents from which respondent's calculations were derived.  We do the same.

[2] Petitioner originally sought redetermination of the following income tax deficiencies determined by respondent: $20,253, $15,272, $10,323, $11,280, and $11,426 for the years 1991 through 1995, respectively.  He also sought redetermination of additions to tax for the same years under secs. 6651(a) and 6654 in the combined amounts of $6,227, $4,484, $3,012, $3,399, and $3,481 respectively.  Section references are to the Internal

(continued...)

Respondent concedes that if we exclude the documents, petitioner is not liable for income tax deficiencies or additions to tax for the years in issue. We hold the search was proper, the documents will not be excluded, and petitioner is liable for tax deficiencies and additions to tax in the agreed-upon amounts.

### Background

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioner resided in Acme, Washington, when he petitioned the Court.

Whatcom County sheriff's deputies entered and searched petitioner's house on two separate occasions. The documents petitioner seeks to exclude were seized in the course of the second search, but the origins of the dispute trace back to the first search.

---

[2](...continued)
Revenue Code in effect for the years in issue. The parties have since agreed that in the event the instant motion is denied, petitioner will be liable for tax deficiencies and additions to tax in the following amounts:

|  |  | Additions to Tax | |
| | | Sec. | Sec. |
| Year | Deficiency | 6651 | 6654 |
| 1991 | $11,108 | $2,277 | $638 |
| 1992 | 7,475 | 1,869 | 326 |
| 1993 | 727 | 182 | 32 |
| 1994 | 4,628 | 1,157 | 239 |
| 1995 | 3,639 | 910 | 199 |

Sheriff's deputies first entered petitioner's house on March 6, 1995. A female member of petitioner's household had called 911, then hung up without identifying herself. The deputies who responded to the call found indications that someone might be inside, but they were unable to contact anyone by telephone. They secured from a local judicial officer by telephone a search warrant that empowered them to go into the house and check on the welfare of whoever might be inside.

No one was home when the deputies entered petitioner's house for the first time. While checking the house to make sure no one was in danger, the deputies saw and seized a number of suspicious items including apparatus for growing marijuana indoors, a gun, and some explosives. The evidence seized and the officers' personal observations of the premises strongly suggested that petitioner's house had been used at some time to raise commercial quantities of marijuana.

On February 22, 1996, members of a local drug task force, including some officers who had been present at the time of the first entry, returned to petitioner's house. On this occasion, the deputies were there to execute a warrant for petitioner's arrest, based on narcotic charges related to the first search of petitioner's house.

When the deputies entered petitioner's home to arrest him, they had reason to believe more than one person might be present.

While one of the officers was detaining petitioner, other officers made a protective sweep of the house. In the course of the sweep, the officers saw evidence that marijuana was being cultivated. As a result, they secured from a local judicial officer by telephone a search warrant that empowered them to seize evidence of marijuana cultivation, documents showing who exercised dominion and control of the premises, and documents indicating sales or distribution of controlled substances.

Among the items the arresting officers seized were receipts that showed petitioner had spent substantial amounts of cash buying auto parts. These receipts demonstrated that petitioner, whom they knew to be unemployed, nevertheless had plentiful cash resources. This corroborated other evidence that petitioner was making extensive marijuana sales for cash. In addition to the seized documents, the officers seized a large number of live marijuana plants and a motorcycle. They carried much of the evidence back to headquarters in a van which they had brought with them when they set out to make the arrest.

On September 25, 1997, petitioner pled guilty to marijuana possession.

Respondent obtained copies of documents the officers had seized when they arrested petitioner and ascertained that petitioner had not filed 1991 through 1995 Federal income tax

returns.  The ensuing investigation led to the deficiency notices petitioner challenges in this proceeding.

### Discussion

Petitioner alleges that respondent calculated his tax liability for the years in issue on the basis of documents seized from his residence by State police officers during an unlawful search.  He further contends that the search was such an egregious violation of the Fourth Amendment to the Constitution that the seized documents should be excluded from consideration in this proceeding.

We begin by noting that the exclusionary rule is primarily a criminal law doctrine with limited application to civil proceedings.  United States v. Janis, 428 U.S. 433 (1976).  In Janis, the Court described a balancing test for identifying the limited circumstances under which it would exclude unlawfully seized evidence from a civil judicial proceeding.  Briefly, the benefit to society of deterring police misconduct must outweigh the cost to society of forgoing relevant, probative evidence. Id. at 454.  This balancing test is derived from the purpose of the exclusionary rule, which, the Court pointed out, is to deter police misconduct.  The Court reasoned that in the absence of valid empirical studies to demonstrate the existence or strength of the deterrent effect of exclusion, courts are forced to assess the likelihood of deterrence under the circumstances of the case

before them.  The Court stated that civil enforcement of Federal tax laws lay outside the "zone of interest" of the State police officers involved in Janis.  As a result of that and other factors, the Court concluded that excluding tainted evidence in a civil tax proceeding was unlikely to have a significant deterrent effect.  The Court left open the possibility, however, that the balance might shift in favor of exclusion if the State police officer involved had a "responsibility or duty to, or agreement with" Federal tax officials.  Id. at 455.

Since Janis, courts considering whether to apply the exclusionary rule in Federal civil tax cases have examined the "zone of interest" of the police officers involved and have generally looked for some sort of agreement between Federal tax officials and the officers who conducted the allegedly improper search.  See, e.g., Tirado v. Commissioner, 689 F.2d 307 (2d Cir. 1982), affg. on other grounds 74 T.C. 14 (1980).  Tirado extended the Janis rationale to a case where some of the officers conducting the search were employed by a Federal agency, namely the Bureau of Narcotics, and another Federal agency, i.e., the Internal Revenue Service (IRS), sought to use the allegedly tainted evidence (a so-called intrasovereign situation).  In Tirado, Federal narcotics agents took part in a search that uncovered cash, documents, and other items which were later sought to be used in a Federal civil tax proceeding.  Although

two Federal agencies were involved, the Court of Appeals for the Second Circuit found that there was no cooperative agreement between the Federal narcotics agents and the IRS. In the circumstances, the court held, the narcotics agents would not be deterred from illegal searches if the evidence they seized were excluded in a Federal civil tax proceeding. See also Grimes v. Commissioner, 82 F.3d 286, 290 (9th Cir. 1996); Wolf v. Commissioner, 13 F.3d 189, 194-196 (6th Cir. 1993), affg. T.C. Memo. 1992-432; Black Forge, Inc. v. Commissioner, 78 T.C. 1004, 1011-1012 (1982); Guzzetta v. Commissioner, 78 T.C. 173, 180-182 (1982).

During the hearing on his motion, petitioner tried to elicit testimony that would establish the existence of a cooperative agreement between respondent and the officers who searched petitioner's house. He failed to do so and has now abandoned his contention that any such agreement existed. As a result, petitioner has abandoned his primary argument for excluding the documents in issue and now relies on an alternate argument to justify exclusion.

Petitioner contends that to preserve judicial integrity, "egregious" police misconduct would justify the exclusion of evidence in a civil tax proceeding without regard to the allegedly misbehaving officers' "zone of interest". He supports this proposition by citing Orhorhage v. INS, 38 F.3d 488 (9th

Cir. 1994), and <u>Adamson v. Commissioner</u>, 745 F.2d 541 (9th Cir. 1984), affg. T.C. Memo. 1982-371.

<u>Orhorhage v. INS</u>, <u>supra</u>, was not a tax case. In <u>Orhorhage</u>, the Court of Appeals for the Ninth Circuit found that an Immigration and Naturalization Service (INS) agent acted egregiously. It barred the INS, the agency which employed the officer, from using evidence he had seized in a civil deportation proceeding. The fact that, in <u>Orhorhage</u>, a single Federal agency was involved in the illegal search and in the subsequent civil enforcement proceeding weakens its precedential value in this case. In <u>Adamson v. Commissioner</u>, <u>supra,</u> which was a Federal civil tax case, the Court of Appeals for the Ninth Circuit found there was no egregious behavior and, therefore, no need to exclude disputed evidence. In its most recent pronouncement on the subject, the Court of Appeals reserved judgment on whether it would exclude evidence in a civil tax proceeding solely on the basis of egregious police misconduct. <u>Grimes v. Commissioner</u>, <u>supra</u> at 288 n.3.

Since the Supreme Court's ruling in <u>United States v. Janis</u>, <u>supra</u>, this Court has been reluctant to exclude otherwise admissible evidence solely because of official misconduct. See <u>Jones v. Commissioner</u>, 97 T.C. 7, 27 (1991); <u>Miller v. Commissioner</u>, T.C. Memo. 1998-72; <u>Weiss v. Commissioner</u>, T.C. Memo. 1988-586, affd. 919 F.2d 115 (9th Cir. 1990). In this

case, we do not reach the question whether an egregious violation of the Fourth Amendment, in and of itself, warrants invoking the exclusionary rule.  We find that the police officers involved did not act improperly, much less egregiously, when they searched petitioner's house.

As the party moving for suppression of evidence, petitioner bears the burden of proof.  Houser v. Commissioner, 96 T.C. 184, 196 (1991).  Petitioner has not met his burden.  At most, he has pointed to circumstances that are subject to conflicting interpretations and has invited us to assume bad faith on the part of the officers involved and to ignore testimony that contradicts his hypotheses.  We decline to do so.

To support his bad faith theory, petitioner notes that on the morning of the arrest, he left his house for a time. He asserts that the deputies, who then had him under surveillance, should have apprehended him outside his house.  He says they waited until he went back inside simply because they wanted to get into his house and conduct a search.  This supposition is contradicted by the record.  Sergeant Steve DeFries, a supervising officer who was at the scene, testified credibly at the hearing that his officers were not in position to make the arrest safely when petitioner left his house that morning.

Petitioner also makes much of a hindsight observation by Sergeant DeFries, expressing disappointment with the outcome of

the operation against petitioner.  The statement petitioner relies on is: "if the van would not have been there * * * we could have pulled it off".

Petitioner had Sergeant DeFries on the witness stand and could have examined him as to what the statement meant.  He failed to do so.  Petitioner has the burden of proof as to the meaning of the statement.  His offer of a speculative interpretation favorable to him is not persuasive and fails to meet his burden of proof.  We decline to find the behavior of the police officers to be egregious on the bases of speculation and innuendo.

Petitioner also denies, again without supporting evidence, that the officers needed to make a protective sweep once they had him in custody.  This contradicts the testimony of the arresting officers on several key points.  A number of factors led the officers to believe someone else might be in the house with petitioner when they entered to make the arrest.

These officers put their lives on the line by entering a house where they knew firearms and explosives had previously been found.  They did not know how many armed suspects they might encounter.  Society routinely asks them to assume such risks.  We will not second-guess the reasonable steps they took to minimize those risks to themselves and to their fellow officers.

In the final analysis, petitioner has simply tried to portray a straightforward police operation as a conspiracy to subvert his privacy rights.  We are not persuaded by any of the arguments petitioner makes to support his theory that such a conspiracy existed.  Accordingly, petitioner's motion in limine will be denied.

> An appropriate order will be issued, and decision will be entered for respondent reflecting the revised amounts to which the parties have agreed.