T.C. Memo. 2013-133

UNITED STATES TAX COURT

GARY L. WARD AND MARIE V. WARD, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22563-09, 17051-10.          Filed May 29, 2013.

Gary L. Ward and Marie V. Ward, pro sese.

Inga C. Plucinski, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge:  In these consolidated cases respondent determined the
following deficiencies, penalties, and additions to tax:

| [*2] Year | Deficiency | Additions to tax sec. 6651(a)(1) | Penalty sec. 6663 |
|---|---|---|---|
| 2002 | $426,983 | --- | $320,237 |
| 2003 | 357,051 | --- | 267,788 |
| 2004 | 608,247 | --- | 452,991 |
| 2005 | 1,133,907 | $283,121 | 851,968 |
| 2006 | 1,092,585 | 272,911 | 820,280 |
| 2007 | 1,082,079 | --- | 827,927 |

In the answer, respondent asserted increased deficiencies and increased penalties pursuant to section 6214(a) as follows:

| Year | Increased deficiency | Increased penalty sec. 6663 |
|---|---|---|
| 2002 | $432,665 | $324,499 |
| 2003 | 427,359 | 320,519 |
| 2004 | 615,794 | 458,651 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

The issues for consideration are: (1) whether petitioners are liable for tax on self-employment income petitioner husband earned for tax years 2001 through 2006; (2) whether petitioners are liable for income tax on $320,670 of wages

[*3] petitioner husband earned for tax year 2007; (3) whether petitioners are liable for income tax on flowthrough income from Ward, Inc., for tax years 2002 through 2007; (4) whether petitioners are liable for income tax for flowthrough income from Ward-Nilsson, Inc., for tax years 2005 through 2007; (5) whether petitioners are liable for income tax for flowthrough income from Ward Consulting, Inc., for tax years 2006 and 2007; (6) whether petitioners are liable for income tax for flowthrough income from Ward Nilsson Enterprises, Inc., for tax year 2007; (7) whether petitioners are liable for income tax attributable to the gain recognized on the sale of stock for tax year 2003; (8) whether petitioners are liable for tax on a net capital gain of $190,000 for tax year 2007; (9) whether petitioner husband is liable for fraud penalties pursuant to section 6663 for all years in issue, or, in the alternative, whether petitioners are liable for negligence or substantial understatement penalties under section 6662(a) for all years in issue; and (10) whether petitioners are liable for additions to tax under section 6651(a)(1) for tax years 2005 and 2006.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioners resided in Utah at the time the petitions in these consolidated cases were filed. Petitioners

[*4] were married at the time the petitions were filed and remain married. Petitioners filed joint Federal income tax returns for all tax years in issue.

Petitioner wife requested relief from the liabilities for income tax and additions to tax determined by respondent for all tax years in issue under section 6015(b) or (f). Respondent determined that petitioner wife is entitled to relief under section 6015(b) to the extent the deficiencies and additions to tax are attributable to erroneous items of petitioner husband. Petitioner husband agrees that petitioner wife is entitled to relief from the liabilities for income tax and additions to tax to the fullest extent allowed by the law.

Gary L. Ward (petitioner) graduated from Stevens Henagar College with a degree in accounting in the 1970s. For over 25 years he prepared Federal income tax returns for compensation. Petitioner was a member of the National Association of Tax Practitioners during this time. Throughout his career he attended annual courses in tax law and tax return preparation.

In May 2010 petitioner was charged with one count of tax evasion in violation of section 7201 in the U.S. District Court for the District of Utah, Central Division. In September 2010 petitioner pleaded guilty to one count of tax evasion under section 7201. The count of tax evasion involved a Federal income tax

[*5] return petitioner prepared in 2007, which reported a fictitious like-kind exchange that eliminated $2 million of taxable income for petitioner's client.

Petitioners filed timely joint Federal income tax returns for tax years 2002, 2003, and 2007. Petitioners filed a joint Federal income tax return for tax year 2004 on October 17, 2005. Petitioners filed a joint Federal income tax return for tax year 2005 on April 11, 2008. Petitioners filed a joint Federal income tax return for tax year 2006 on April 16, 2008. On September 29, 2008, respondent received additional joint Federal income tax returns for tax years 2005 through 2007 from petitioners, which were marked "amended". Respondent did not process these returns.

Petitioner did not introduce evidence that records were kept to support his tax returns or income earned by his various businesses. During the audit process with respondent petitioner did not provide documentation to show how much income he earned during the years at issue.

Ward, Inc.

Ward, Inc., was incorporated in Utah and elected to be treated as an S corporation for Federal income tax purposes on March 2, 1994. Ward, Inc., offered tax return preparation, bookkeeping, and payroll services to clients. During the tax years in issue, petitioner was the sole shareholder, president, and

[*6] director of Ward, Inc., and he participated in the corporation's day-to-day operations. Petitioner also provided accounting, bookkeeping, and tax return preparation services to clients on behalf of Ward, Inc.

Ward, Inc., maintained various bank accounts, including a savings account and business and checking accounts, at Brighton Bank. Petitioner had authority to deposit and withdraw money from these bank accounts. He used money deposited in these accounts to pay personal and family expenses. In January 2009 petitioner sold his interest in Ward, Inc., to Andrews Financial Corp.

Ward, Inc., did not file a Federal income tax return for tax year 2002. For tax year 2003 Ward, Inc., filed a timely Federal income tax return. On October 17, 2005, Ward, Inc., filed a Federal income tax return for tax year 2004. Ward, Inc., did not file a timely Federal income tax return for tax year 2005. On September 29, 2006, petitioner gave respondent's revenue agent a copy of Ward, Inc.'s Federal income tax return for tax year 2005. Respondent did not process this return. On April 7, 2008, respondent's service center in Ogden, Utah, received Ward, Inc.'s Federal income tax return for tax year 2005. On April 7, 2008, Ward, Inc., filed Federal income tax returns for tax years 2006 and 2007.

Upon review of petitioners' personal income tax returns in April 2008, respondent conducted a promoter preparer investigation of petitioner. Through

**[\*7]** the investigation it was determined that petitioner had helped his clients reduce their taxable income and their tax liability by creating fictitious deductions. A pattern was found in which section 179 deductions were claimed for fictitious vehicle purchases.

Ward-Nilsson, Inc.

Petitioner incorporated Ward-Nilsson, Inc., in Utah on November 29, 2004. Ward-Nilsson, Inc., elected to be treated as a flowthrough entity under subchapter S for income tax purposes. During tax years 2005 through 2007 petitioner was the sole shareholder, officer, and director of Ward-Nilsson, Inc. Ward-Nilsson, Inc., filed its 2005, 2006, and 2007 Federal income tax returns on April 7, 2008.

Ward Consulting, Inc.

Ward Consulting, Inc., was incorporated in Utah on September 26, 2006. Ward Consulting, Inc., elected to be treated as a flowthrough entity under subchapter S. In 2006 and 2007 petitioner was the sole shareholder and president of Ward Consulting, Inc., and he performed personal services on behalf of the corporation.

Ward Consulting, Inc., filed a delinquent Federal income tax return for tax year 2006 on April 7, 2008. Respondent's service center in Ogden, Utah, received two Forms 1120S, U.S. Income Tax Return for an S Corporation, both purporting

[*8] to be Federal income tax returns for Ward Consulting, Inc., for 2007. The two returns do not include the same amounts of gross receipts, deductible business expenses, or ordinary business expenses.

Ward Nilsson Enterprises, Inc.

Ward Nilsson Enterprises, Inc., was incorporated in Utah on August 30, 2007. In September 2007 Ward Nilsson Enterprises, Inc., elected to be treated as a flowthrough entity under subchapter S for tax purposes. Petitioner was the sole shareholder in 2007, and he performed personal services on behalf of the corporation. In 2007 he received $10,000 in compensation from Ward Nilsson Enterprises, Inc., for those services.

Ward Nilsson Enterprises, Inc., maintained a business checking account with Brighton Bank. Petitioner had authority to make deposits and withdrawals from the account.

Loans

During tax years 2002 through 2005 petitioner applied for several personal loans from Brighton Bank. In 2004 he also applied for a loan from Washington Federal Savings. Petitioner submitted copies of tax returns to the banks as part of the loan application process. The amounts of taxable income shown on the returns submitted to the banks were greater than the amounts stated on petitioners' Federal

[*9] income tax returns as filed. These alternate returns showed substantially more income than the filed returns. For example, petitioners 2002 tax return filed with respondent showed gross income of $45,010, and the 2002 return given to the banks showed gross income of $307,699.

Other Issues

During tax year 2003 petitioners received $3,177 in proceeds from the sale of stock; however, petitioners did not include this amount on their Federal income tax return. This amount was included in the notice of deficiency for tax year 2003.

The notice of deficiency for tax year 2007 determined that petitioners had a net capital gain of $190,000 for the partial sale of petitioner's business, Ward Nilsson Enterprises, Inc., which petitioners failed to report on their Federal income tax return.

OPINION

Unreported Income

Section 61(a) provides that gross income includes "all income from whatever source derived". See also Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Section 1366(a) provides that income, losses, deductions, and credits of an S corporation are passed through pro rata to its shareholders on their individual income tax returns. The character of each item of income is

[*10] determined as if it were realized directly from the source from which the corporation realized it or incurred in the same manner as it was by the corporation. Sec. 1366(b). A shareholder's gross income includes his or her pro rata share of the S corporation's gross income. Sec. 1366(c).

Generally section 1402 defines "self-employment income" as "net earnings from self-employment." Section 1402 defines net earnings from self-employment as gross income derived from any trade or business carried on by such individual, less the deductions allowed which are attributable to such trade or business.

A taxpayer is required to maintain adequate books and records sufficient to establish his or her income. See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). If a taxpayer fails to maintain these records the Commissioner may determine income under the bank deposits method. DiLeo v. Commissioner, 96 T.C. at 867. A bank deposit is prima facie evidence of income. Id. at 868. The Commissioner is not required to follow any leads suggesting that a taxpayer might have deductible expenses. Id. at 872. Once the Commissioner has made this prima facie case the taxpayer bears the burden of showing that the deposits made into his or her account represent nontaxable income. See id. at 869. The taxpayer must present credible evidence to shift the burden of proof to the Commissioner under section 7491(a). Petitioner failed to

**[\*11]** do so.  Respondent has the burden of proof for the increased deficiencies asserted in the answer.  See Rule 142(a)(1).

Respondent examined Federal income tax returns for the tax years in issue for petitioners' four S corporations:  Ward, Inc., Ward-Nilsson, Inc., Ward Consulting, Inc., and Ward Nilsson Enterprises, Inc. (collectively, S corporations).  Respondent reviewed the S corporations' gross income, petitioners' individual tax returns, and the deductions on the S corporations' returns.  Respondent did a bank deposits analysis that included the bank accounts of the S corporations, petitioner's personal bank account, and the Ward Family Trust bank accounts and examined whether the bank deposits matched up closely with the income which was reported on the various returns.  To prepare his analysis, respondent analyzed bank statements, bank deposits, deposit slips, and deposit checks.  Respondent compared amounts in the bank accounts with the amounts reported on petitioners' Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., and the gross receipts reported on the S corporations' Forms 1120S.  Respondent's analysis showed the following:[1]

---

[1]This table was constructed from the testimony of the first witness and from various exhibits.

[*12]

| Year | Source | Gross receipts | Amount on income tax return | Omitted gross receipts |
|---|---|---|---|---|
| 2002 | Ward, Inc. | $1,315,940 | ($14,832) | $1,330,772 |
| 2003 | Ward, Inc. | 1,347,490 | 486,417 | 861,073 |
| 2004 | Ward, Inc. | 1,951,746 | 450,243 | 1,501,503 |
| 2005 | Ward, Inc. | 3,200,224 | 155,775 | 3,044,449 |
| 2006 | Ward, Inc. | 2,894,381 | 66,750 | 2,827,631 |
| 2007 | Ward, Inc. | 2,613,531 | 187,015 | 2,426,516 |
| 2006 | Ward Consulting, Inc. | 152,247 | 122 | 152,125 |
| 2007 | Ward Consulting, Inc. | 339,750 | 44,560 | 295,190 |

During tax years 2002 through 2007 petitioner applied for a number of personal loans and submitted copies of his personal Federal income tax returns and Ward, Inc.'s Federal income tax returns to the banks. These tax returns were not identical to the returns filed with respondent; rather, they showed more income from the S corporations than the tax returns filed with respondent. Petitioner did not provide an explanation for the discrepancies in income.

During the audit petitioner provided receipts for some expenses; however, these expenses often did not match what was reported on petitioners' Federal

**[*13]** income tax returns. Personal expenses were deducted regularly as business expenses; those expenses were disallowed. Some of the business expenses were substantiated; those deductions were allowed. Petitioner did not contend that further deductions should be allowed.

While auditing petitioners' Federal income tax returns, respondent noticed a pattern of false paper trails involving section 179 deductions and other deductions. Respondent contends that petitioner was facilitating transactions by creating a false paper trail and claiming false deductions on his client returns. During the audit respondent questioned petitioner about these income discrepancies. Petitioner explained that the income was for the sale of cars; however, he did not show that he had a license to sell cars and he did not provide any substantiation of car sales or purchases.

Respondent contends that petitioner, with the assistance of his employees, advised clients that they could claim a section 179 deduction for purchasing a vehicle without taking possession of the vehicle. According to respondent's testimony, clients were advised to write a check payable to one of the S corporations. The check would be deposited into one of petitioner's bank accounts. Petitioner did not provide supporting evidence or provide an explanation for the section 179 deductions. Petitioner contended that he or one of

[*14] his employees would then write a check payable to the individual in an amount less than the original amount paid by the client. Petitioner told his clients that the difference was the amount paid by the client and the cost and sale of the vehicle. In some instances petitioner could not prove that a vehicle was actually purchased. Respondent contended that there was no evidence to show the funds were actually returned to the taxpayer.

Respondent cited an example at trial in which petitioner prepared a Federal income tax return for a business with a section 179 deduction that involved an alleged car purchase. Respondent contends that petitioner prepared the Federal income tax return for this business and that there was unreported income for tax years 2006 and 2007 on the tax return of the individual who owned 50% of the business. Petitioner sent a letter to respondent explaining that he was responsible for all transactions that took place regarding these tax returns.

Respondent inquired about the section 179 deduction and, after further investigation, determined that petitioner had attempted to substantiate the section 179 deduction by using a false document. Respondent requested from the Utah Tax Commission a history of the VIN number contained in the document used to substantiate the section 179 deduction on the Federal income tax return of the

[*15] business.  The history showed that petitioner never owned the related vehicle.  Petitioners' income tax return for 2004 has the same section 179 deduction.

Petitioner failed to provide documents that showed that any of the income from respondent's bank deposits analysis was not actually income.  He also contends that he stopped preparing tax returns in 1994; however, petitioner continued to sign tax returns as the preparer.  Returns were prepared by his employees.  Petitioner also contends that he was not the owner of Ward, Inc.; however, he provided no documentation to support this claim and the stipulation of facts establishes him as the sole shareholder, president, and director of Ward Inc., for taxable years 2002 through 2007.

When petitioner was investigated he did not provide an explanation for the section 179 deductions on his clients' Federal income tax returns.  At trial he did not provide any explanation or other evidence to show that cars were actually purchased.[2]

Petitioner repeatedly underreported his income for all tax years in issue.  There was a consistent pattern of failing to report the gross receipts as documented

---

[2]Petitioner did not produce documents that showed cars were purchased or that checks were written to clients returning some of their funds.

[*16] in the bank deposits analysis. Petitioner was not able to substantiate deductions, and often personal expenses were deducted as business expenses. Petitioner performed services for his various subchapter S corporations and received wages as well as flowthrough income. The notices of deficiency indicate that petitioner received compensation from Ward, Inc., Ward-Nilsson, Inc., Ward Consulting, Inc., and Ward Nilsson Enterprises, Inc. Petitioner did not show this income was not wages. We note that petitioner wife is entitled to relief under section 6015(b) to the extent the deficiencies and additions to tax are attributable to erroneous items of petitioner. Therefore, we find that (1) petitioner is liable for tax on self-employment income earned by him for tax years 2001 through 2006;[3] (2) petitioner is liable for tax on $320,670 of wage income earned by him for tax year 2007; and (3) petitioner is liable for tax on flowthrough income from his various S corporations for all tax years in issue.

Other Issues

The notice of deficiency included $3,177 of net capital gains income for 2003 from the sale of stock. Respondent contends that the stock belonged to

---

[3]Petitioner did not challenge the characterization of his income as self-employment income, and he did not otherwise provide evidence to support his burden of proof on this issue.

[*17] petitioner wife.  Petitioners have not proven otherwise and did not produce evidence regarding the ownership of stock.[4]

The revenue agent testified that there was a bank deposit of $190,000 to Ward Nilsson Enterprises, Inc., in 2007.  Upon examination petitioner indicated that he sold a portion of Ward Nilsson Enterprises, Inc., to Mr. Nilsson for $190,000.  Petitioners have failed to provide evidence to the contrary.

Section 61(a)(3) includes in income gains derived from dealings in property. We find that petitioners received income from the sale of stock and from the partial sale of Ward Nilsson Enterprises, Inc.  We find that petitioners are liable for tax attributable to the $3,177 of net capital gains income, and petitioner is liable for tax attributable to the partial sale of Ward Nilsson Enterprises, Inc.

Section 6663 Fraud Penalty

Fraud is an intentional wrongdoing on the part of a taxpayer with the specific purpose to evade a tax believed to be owed.  Sadler v. Commissioner, 113

---

[4]Petitioner wife requested innocent spouse relief pursuant to sec. 6015(b) and/or (f).  Respondent determined that, pursuant to sec. 6015(b), petitioner wife is entitled to relief from joint and several liability for the deficiencies in income tax attributable to erroneous items of petitioner for the tax years at issue. Petitioner wife is not entitled to relief pursuant to sec. 6015(b) or (f) with respect to the tax imposed regarding the income on the sale of stock as it would seem to be attributable to her and she failed to provide any evidence demonstrating that it would be inequitable to hold her liable for the tax.

[*18] T.C. 99, 102 (1999). The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for protection of revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Sadler v. Commissioner, 113 T.C. at 102. The Commissioner has the burden of proving by clear and convincing evidence an underpayment for each year in issue and that it is due to fraud. Sec. 7454(a); Rule 142(b). The Commissioner must show that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes. Katz v. Commissioner, 90 T.C. 1130, 1143 (1988). If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud and subject to a 75% penalty, unless the taxpayer establishes that some part of the underpayment is not attributable to fraud. Sec. 6663(a) and (b). In the case of a joint Federal income tax return, the section 6663 penalty "shall not apply with respect to the spouse unless some part of the underpayment is due to the fraud of such spouse." Sec. 6663(c). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 516 (1992). Fraud may be proved by circumstantial evidence and inferences drawn from the facts because direct proof of a taxpayer's

**[\*19]** intent is rarely available. Niederinghaus v. Commissioner, 99 T.C. 202, 210 (1992). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. DiLeo v. Commissioner, 96 T.C. at 874; Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including the consistent understatement of income, inadequate records, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601.

Petitioner had a pattern of underreporting his income for all tax years in issue. Petitioner's bank deposits did not match the income reported on petitioners' Federal income tax returns. There was also a discrepancy in the amounts of income on the Federal income tax returns filed and the tax returns provided to banks as part of a loan application. This pattern of understatement is evidence of fraud.

Petitioner failed to maintain records that would disclose his correct taxable income. In addition, petitioner was unable to explain deposits made into his bank accounts. Petitioner has a background in tax return preparation and was in the business of preparing tax returns. He was a member of the National Association of

[*20] Tax Practitioners.  Given his education and work experience we expect that he has a working knowledge of the tax laws and understands that records should be kept.

Respondent investigated petitioners for filing fraudulent tax returns, and petitioner was convicted of tax evasion.  At trial petitioner stated:  "I will admit that we did abuse section 179."  With respect to the fictitious section 1031 like-kind exchange petitioner stated:  "We screwed up and we missed a deadline and we didn't handle that one right."

Respondent showed that there was a repeated history of underpayment of tax due to underreported income.  Petitioner's bank deposit income did not match the income reported on his tax returns.  Respondent has shown by clear and convincing evidence that petitioner intended to avoid taxes by concealing income through the S corporations.  Even though petitioner was contrite, he had no plausible explanation for why the income was not reported.  We find that petitioner is liable for the fraud penalty under section 6663 for all tax years in issue.  Therefore, petitioner is not liable in the alternative for negligence or substantial understatement penalties under section 6662(a) for all years in issue.

**[\*21]** <u>Section 6651(a)(1) Addition to Tax</u>

Section 6651(a)(1) provides that in the case of failure to file a tax return on the date prescribed for filing (including any extension of time for filing), there shall be added to the tax required to be shown on the return an amount equal to 5% of that tax for each month or fraction thereof that failure to file continues, not exceeding 25% in the aggregate, unless it is shown that the failure to file timely is due to reasonable cause and not willful neglect. See also <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985); <u>Baldwin v. Commissioner</u>, 84 T.C. 859, 870 (1985); <u>Davis v. Commissioner</u>, 81 T.C. 806, 820 (1983), <u>aff'd without published opinion</u>, 767 F.2d 931 (9th Cir. 1985). A taxpayer has the burden of proving that the failure to timely file was due to reasonable cause and not willful neglect. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 447 (2001).

Under section 7491(c), the Commissioner bears the burden of producing evidence with respect to the liability of the taxpayer for any penalty. See also <u>Higbee v. Commissioner</u>, 116 T.C. at 446-447. Respondent met this burden because petitioner filed petitioners' Federal income tax returns late for tax years 2005 and 2006. Once the Commissioner has met this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 447. Petitioner failed

**[\*22]** to demonstrate reasonable cause and lack of willful neglect for filing late returns.  See sec. 301.6651-1(c), Proced. & Admin. Regs.  Therefore petitioner is liable for the additions to tax under section 6651(a)(1) for tax years 2005 and 2006. In the light of respondent's concession petitioner wife is liable for the additions to tax under section 6651(a)(1) only to the extent the additions to tax may be viewed as attributable to petitioner wife.[5]

We have considered the other arguments of the parties and they are  without merit or need not be addressed in view of our resolution of the issues.

To reflect the foregoing,

Decisions will be entered

under Rule 155.

---

[5]Petitioner wife failed to provide any evidence demonstrating that it would be inequitable to hold her liable for the tax.